Estate of Franklin S. Edmonds, Deceased, Elise J. B. Edmonds and John F. E. Hipple, Executors v. Commissioner.
Estate of Franklin S. Edmonds, Deceased v. Commissioner
Docket No. 7910.
United States Tax Court
1946 Tax Ct. Memo LEXIS 120; 5 T.C.M. (CCH) 668; T.C.M. (RIA) 46179; July 31, 1946
Gladstone P. Lillicrapp, Esq., 1418 Packard Bldg., Philadelphia 2, Pa., for the petitioners. Robert H. Kinderman, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: Petitioners, executors of the estate of Franklin S. Edmonds, hereinafter referred to as decedent, challenge respondent's determination of a deficiency in decedent's income tax for the year 1941 in the amount of $819.29. They also claim an overpayment. The petition *121 was filed on May 5, 1945, by decedent. Upon his death, upon motion duly made, the executors of his estate were substituted as petitioners and the caption of the proceeding changed. The only issue presented is whether exchanges in prior years of corporate bonds and debentures for new bonds of the same corporations pursuant to offers of the corporations under 77B reorganization plans fall within the non-recognition provisions of section 112 (b) (3) of the Revenue Act of 1934 and the Internal Revenue Code, so that on subsequent sales in 1941 the basis for loss was decedent's cost of the original securities. All of the facts have been stipulated or admitted by the pleadings. They are hereby found accordingly and can be summarized as follows: [The Facts] In Schedule "F" attached to his 1941 income tax return, which was filed with the collector at Philadelphia, decedent reported, among other things: (1) The sale on December 17, 1941 for $39.50 of "$1,000 C. Benton Cooper Real Estate 6's (Penn Athletic Club)" bonds acquired on September 30, 1924, by purchase at par, with a claimed loss thereon of $960.50. (2) The sale on December 22, 1941, for $747.50, of "$5,000 Pacific Northwestern *122 Public Service Co." debentures acquired in February, 1930, by purchase for $4,975, with a claimed loss thereon of $4,227.50. The report of the first transaction was in error, in that the sale price was only $29.50; the report of the second was also error, in that the debentures were acquired sometime after March 1, 1930. Decedent paid the tax shown to be due by his return as follows: March 16, 1942
$4,614.00
May 14, 1942
5,386.00
Sept. 9, 1942
2,267.35
Respondent, in his notice of deficiency, disallowed the claimed losses with the following explanation: The alleged capital loss of $960.50, claimed as a deduction from gross income on your 1941 income tax return as a capital loss sustained on the sale of $1,000.00 C. Benton Cooper Real Estate 6's (Penn Athletic Club) bond, is reduced to $50.50. Two-thirds of the sum of $50.50, or $33.67, is allowed as a deduction in computing your taxable net income. The reduction results from the fact that receipt of said bond in exchange of securities pursuant to a plan adopted in 1940 in a proceeding under section 77(B) of the Federal Bankruptcy Act constitutes a transaction in which gain or loss is recognized and therefore *123 said bond had a cost basis of $80.00, being the fair market value at the time of the exchange in 1940. The alleged capital loss of $4,227.50, claimed as a deduction from gross income on your 1941 income tax return as a capital loss sustained on the sale of $5,000.00 Pacific Northwestern Public Service Company bond, is disallowed in full for the reason that no loss was sustained during the taxable year. The gross income as reported is increased by $170.63, or one-half of the sum of $341.25, the amount of capital gain realized on the sale of said bond. The disallowance results from the fact that the receipt of said bond in exchange of securities pursuant to a plan adopted in 1935 in a proceeding under section 77(B) of the Federal Bankruptcy Act constitutes a transaction in which gain or loss is recognized and therefore said bond had a cost basis of $406.25, being the fair market value at the time of the exchange in 1935. In December, 1936, Penn Athletic Club (hereafter referred to as Penn) filed a petition for reorganization under section 77B of the Bankruptcy Act, as amended, in the District Court of the United States for the Eastern District of Pennsylvania, docketed as No. 19563; *124 Penn, as guarantor of $3,000,000 6 percent first mortgage bonds, due September 15, 1944, was in default on interest and sinking fund payments thereon and in payments due on other securities it guaranteed, pursuant to the terms of a lease entered into with its wholly-owned subsidiary. Decedent had purchased $1,000 face amount of such bonds on September 30, 1924, at par. A plan of reorganization was approved by the District Court on April 21, 1939, and approved as modified on December 14, 1939. The plan, as modified, provided, among other things, that the bonds be surrendered for purposes of stamping thereon an extension of maturity date from September 15, 1944, to December 31, 1951, and a reduction of interest rate, as provided in the plan. Pursuant to the plan, decedent in 1940 delivered up to the trustee the $1,000 first mortgage bonds, which were stamped on the face thereof to show a change in maturity date, and a reduction in interest rates. At that time, decedent received $10 in cash, representing his share of the "payment [which] shall be in consideration of the waiver and cancellation by said Trustee of any existing claims for use and occupation under these proceedings. *125 " The fair market value of the bonds at the time of delivery to the trustee in 1940 was $80. No return with respect to the bonds was made by decedent in his income tax return for 1940. Decedent sold the bonds, as reported in his 1941 tax return. Under the date of March 1, 1930, Pacific Northwest Public Service Co., which changed its name in 1933 to Portland Electric Power Company (hereafter referred to as Portland), issued certain 6 percent debentures, due March 1, 1950, pursuant to a mortgage indenture of the same date, $5,000 face value of which were purchased by decedent in 1930 for $4,975. Under date of September 26, 1934, Portland filed a petition under section 77B of the Bankruptcy Act in the District Court of the United States for the District of Oregon, docketed as No. B-19402. A plan of reorganization was approved by the District Court on March 5, 1935. Pursuant to the plan, Portland issued new Collateral Trust Income Bonds, bearing the same rate of interest and due the same date as the debentures, under a new mortgage indenture, the old mortgage having been cancelled. These bonds were issued to the registered holders of the debentures, dollar for dollar face *126 value, upon surrender of the debentures. In March, 1935, decedent surrendered his debentures of $5,000 face value and in return received therefor $5,000 face value of the new bonds, together with $150 cash, as adjustment of 1934 interest. The debentures were forthwith cancelled. At the date of this transaction, the surrendered debentures, as well as the new bonds received, had a fair market value of $406.25. No return in respect of the surrender of the debentures and the receipt of the new bonds was made by decedent in his income tax return for the year 1935. Decedent sold the bonds in 1941, as reported in his 1941 tax return. [Opinion] Respondent concedes the applicability and conclusiveness in petitioners' favor of , affirmed (C.C.A., 2nd Cir.), . He notes merely his desire to reargue that case, and in fact characterizes his present contentions as identical with those which were advanced and rejected in that case. In one respect it seems possible to suggest that the very argument thus urged has become even less persuasive. What could then be said about the ambiguous statutory language and *127 the conceded necessity of strict compliance with legislative requirements must now be qualified. There has since become available as an aid to interpretation the subsequent reenactment [1] of the applicable section without the expression of any congressional disapproval of the Neustadt hypothesis by amendment or revision in that regard. Whatever doubt we may have had as to the necessity of adherence to the rule there expressed is hence even further diminished. Respondent's determination is disapproved. By reason of the claimed overpayment. Decision will be entered under Rule 50. Footnotes
1. Revenue Act of 1943, sections 121(d)(4) and (e).↩